# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LaTONYA DONALD,

                  **Plaintiff,**

      **v.**

PORTILLO'S HOT DOGS, INC.,

                  **Defendant.**

Case No. 09 C 7436

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Portillo's Hot Dogs, Inc.'s (hereinafter, "Portillo's) Motion for Summary Judgment and Motion to Strike. For the reasons stated herein, the Court grants in part and denies in part Defendant's Motion to Strike and grants in part and denies in part the Motion for Summary Judgment.

## I.  BACKGROUND

Portillo's operates 32 fast-food restaurants in the Chicagoland area. It employed Plaintiff LaTonya Donald ("Donald") from February 2002 until September 2010. Donald began as a Guest Services employee, but was promoted to a Crew Chief position in 2004. She remained in this position until her employment with Portillo's ended. As a Crew Chief, Donald was responsible for overseeing employees, managing quality control issues, and maintaining overall guest satisfaction. She was also expected to run various work stations at the restaurant and

implement corrective measures when necessary. Periodically, Donald was responsible for opening the restaurant and handling the cash from the restaurant's safe.

In March 2006, Donald claims she was promoted on a part-time basis to Banquet Manager. Portillo's contends that Donald never received a formal promotion and instead claims that she was asked to assist with banquets periodically.

In April 2006, Portillo's informed Donald that her assistance with banquets was no longer needed. Donald interpreted this to be a demotion. Also, around this time Donald claims that her then-Manager, Javier Castillo ("Castillo"), was engaging in racially discriminatory behavior. She states that beginning in May 2006, Castillo engaged "in professionally negative activities [including] . . . cursing . . . [and] reducing the amount [of Donald's] overtime." *See* Pl.'s Charge of Discrimination, ECF No. 1, PageID# 8. Apparently, Donald vocalized her concerns about Castillo to her supervisors.

As a result, in July 2006, Portillo's transferred Donald to its Skokie location. Donald claims the transfer was forced while Portillo's asserts it was voluntary.

On August 14, 2006, Donald filed her first charge of discrimination with the Illinois Department of Human Rights (the "IDHR") and the Equal Employment Opportunity Commission (the "EEOC"). The bases of her charge were (1) her alleged demotion;

(2) Castillo's alleged discriminatory behavior; and (3) her to transfer to Skokie.

After she filed the charge, Donald contends Portillo's retaliated against her. She claims her supervisors began to apply different standards for her with respect to her pay and performance and states Portillo's encouraged other employees to speak in Spanish about business matters in her presence. At some point in 2007, Donald amended her August 2006 charge to include allegations of retaliation.

After her transfer to Skokie, Donald remained unhappy with her employment. She alleges that her Skokie Manager, Dan Caliendo ("Caliendo"), also engaged in discriminatory behavior by reducing her overtime hours and holding meetings without her. Donald also complained that Caliendo failed to protect her when a customer used racially derogatory language toward Donald.

In July 2007, Donald requested to be transferred again. Portillo's granted this and transferred her to its Tinley Park location. Despite the second change in location, Donald continued to complain of discrimination.

On January 31, 2008, Donald filed a second charge of discrimination with the IDHR and the EEOC. In the 2008 charge, Donald claimed Portillo's continued to discriminate against her on the basis of her race and gender and continued to retaliate against her because of her August 2006 discrimination charge.

The factual allegations in Donald's second charge repeated many of the allegations in the first.

Donald's third charge of discrimination was filed on April 8, 2008. In this charge, Donald complained that Portillo's "discriminatorily issued [her] a Counseling Statement for Violating the Cash Policy on February 1, 2008." *See* Compl. at 12, ECF No. 1, PageID# 12. She also claimed that another one of her Managers, Patrick Tuszynski ("Tuszynski"), was harassing her and other African-Americans and creating a hostile work environment.

On April 14, 2008, Donald filed an amendment to her April 2008 charge. In the amendment, Donald reiterated many of her prior complaints and stated that Portillo's subjected her to a hostile work environment. The basis of the hostile work environment charge was that Castillo, her first manager, was promoted to a position as Area Manager and became responsible for supervising the Skokie restaurant after Portillo's transferred Donald there. Donald received a Right to Sue letter from the EEOC on August 29, 2009. She filed her initial Complaint in this Court on November 30, 2009.

Donald's employment with Portillo's ended on September 24, 2010. Donald alleges that on that date she had a family emergency and was unable to arrive to work on time. She claims when she arrived to work and explained to her superiors what had

happened they informed her that this constituted her "final attendance" violation. Donald's Decl. ¶ 43, ECF No. 71-1, PageID# 1313. Portillo's disputes this and instead claims that when Donald notified her manager of her family situation, the manager on duty allowed Donald to take the rest of the day off. Regardless, it is undisputed that Donald left Portillo's at 10:40 a.m. on the said date and did not return to the restaurant until the following day when she returned her keys and uniform. At this time, Donald also gave a letter to the manager. The letter directed Portillo's to refrain from contacting Donald directly and instead instructed Portillo's to contact her attorney.

On March 31, 2011, Donald filed her Second Amended Complaint. In it, she brings five counts against Portillo's under Title VII. Count One alleges racial discrimination; Count Two alleges gender discrimination; Count III alleges retaliation; and Counts IV and V assert hostile work environment claims. Portillo's has moved for summary judgment on all Counts.

## II. **DISCUSSION**

### A. **Portillo's Motion to Strike**

Before turning to the merits of the Summary Judgment Motion, the Court addresses Portillo's Motion to Strike. A brief review of the procedural history provides guidance.

Portillo's filed its Motion for Summary Judgment on November 16, 2012. *See* ECF Nos. 58-61. After that Donald moved

for two extensions of time – once orally on November 27, 2012 and again on December 26, 2012. The Court granted both of these extensions. *See* ECF Nos. 62, 63. Despite this, Donald filed her Response two days late and failed to provide any explanation for her tardiness. *See* ECF Nos. 68-71. In addition, her response brief exceeded the Local Rule's page limitation and her statements of additional facts exceeded that which is permitted under Local Rule 56.1. While Donald filed a Motion for Leave to File an Extended Brief on the same day she filed her Response, this Motion was never presented as required by Rule 5.3(b) and indeed, has never been ruled upon. Because of these failures, the Court could disregard Donald's response entirely. *See*, *Little v. Cox's Supermarkets,* 71 F.3d 637, 640 (7th Cir. 1995) (district courts have the discretion to apply the Local Rules strictly or "overlook any transgression."). However, since the Court does not wish to protract this litigation further, the Court will overlook these transgressions and grant Donald's Motion to file a lengthy brief and enlarged statement of additional facts. ECF No. 67. The Court notes that future disregard for the Local Rules will not be tolerated.

After Portillo's reviewed Donald's Response, it filed a Motion to Strike portions of her Statements of Additional Facts and portions of her response to Portillo's 56.1 Statements of Material Facts. It also requested that the Court strike other

documents Donald submitted. Prior to addressing these objections, the Court finds it necessary to remind the parties of the requirements of Local Rule 56.1.

Local Rule 56.1 governs motions for summary judgment. Its purpose is to "make it relatively simple for the court to determine whether there are bona fide issues of fact requiring a trial." *Widmar v. Sun Chemical*, No. 11-C-1818, 2012 U.S. Dist. LEXIS 148684 at *1 (N.D. Ill. Oct. 16, 2012). The Rule requires the party moving for summary judgment to put forth a statement of "material facts." L.R. 56.1(a). This statement should consist of "short numbered paragraphs" that include specific references to "affidavits" or "other parts of the record" that support the facts set forth. *Id.*

Pursuant to Rule 56.1, the party opposing summary judgment must give "a concise response" to each of the movant's statements. If the opposing party denies a fact as true, the Rule requires the opposing party to provide "specific reference to affidavits, parts of the record, and other supporting materials" that support the denial. L.R. 56.1(b). "The term specific reference means that a party must include proper Bluebook citations to exact pieces of the record that support the contention contained in the paragraph." *De v. City of Chicago*, No. 11-C-4521, 2012 WL 6605009 at *1 (N.D. Ill. Dec. 14, 2012) (citations omitted). The citations should include page or

paragraph numbers rather than simply referencing an entire deposition, affidavit or other exhibit. *Id.* "[A] general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial." *Malec v. Sanford,* 191 F.R.D. 581, 584 (N.D. Ill. 2000).

To say that the parties here have failed to abide by Local Rule 56.1 is an understatement. Portillo's Statements of Material Fact are anything but "short paragraphs" and Donald's responses are even longer. L.R. 56.1. In the past, this Court has denied motions summary judgment motions on these failures alone. *See, e.g., Widmar,* 2012 U.S. Dist. LEXIS 148684. However, because the Court does not wish to prolong this 2009 case further, it will excuse the parties' failures in this instance and will proceed to the merits of both the Motion to Strike and the Motion for Summary Judgment.

### 1. Donald's Response to Portillo's 56.1 Statements of Facts [ECF No. 69]

Portillo's objects to Donald's response to paragraphs 4, 7, 8, 10, 12, 14, 15, 16, 19, 20, 22, 23, 26, 27, 28, 29, 47, 52, 53, 59, 60, 61, 63, 65, 67, 70, 77, 82, 83, 84, 91, 92, 93, 94, 95, 101, 107 and 108. It asserts that the facts in these paragraphs should be deemed admitted and the additional facts contained in Donald's response should be struck.

While the Court agrees with Portillo's characterization of many of the aforementioned responses, Portillo's lengthy statements of fact are to blame for some of the long responses. For example, the Court finds paragraphs 4, 7, 8, 26, and 27 acceptable. These paragraphs respond to the statements Portillo's sets forth, and Donald provides adequate support for such responses. Despite the fact Paragraph 26 both admits and denies Portillo's statement, this is appropriate since Portillo's included multiple facts in the same paragraph. The same is true of Paragraph 27.

Paragraphs 10, 12, 14, 15, 16, 20, 22, 23, 28, 29, 47, 52, 53, 59, 60, 61, 63, 65, 67, 70, 82, 83, 84, 91, 92, 93, 94, 95, 101, 107, 108 are a different story. Donald's responses in these paragraphs are either unresponsive, irrelevant, or unsupported.

Paragraph 29 provides a good example of Donald's lack of responsiveness. Portillo's statement reads:

> On August 3, 2006 and August 25, 2006, Sharon Maloney met with Plaintiff at the Skokie restaurant to follow up with her about her complaints about Javier Castillo and her at C&O [Portillo's Chicago location], obtain a written statement from her about her complaints about Castillo to aid in the investigation, make sure she was happy in her new location, and discuss alternative work locations she may prefer.

Def.'s Statement of Material Fact 29 (citations omitted).

Donald's response states:

> Admitted that Maloney saw Donald at the
> Store in August, but that Maloney was there
> in part to address other matters. Further,
> at these meetings, the topic at issue
> related to Portillo's investigation with
> respect to a charge made by Raquel Dawson
> that Castillo used racially charged language
> (i.e., "mammie) . . . Donald unequivocally
> notified Portillo's that she witnessed
> Castillo use the racially charged language .
> . . Otherwise, Donald indicated to Maloney
> that she wanted to have Portillo's follow up
> on her complaints regarding Castillo, but
> with someone other than Sharon Maloney as
> Donald believed that Maloney was engaging in
> retaliatory actions with respect to Donald
> and thus was not appropriate to be working
> with Donald regarding Maloney. Donald had
> attempted to reach out to Portillo's legal
> counsel regarding this issue but Donald was
> told that the legal department could not
> help Donald.

Pl.'s Resp. to Def.'s Statement of Material Fact in Supp. of Mot.
for Summ. J. ¶ 4, at 17-18.

Clearly, the above is unresponsive and adds facts which are
inappropriate in a response pursuant to Local Rule 56.1. *See*
*Malec*, 191 F.R.D. at 584 (stating a Rule 56.1(b)(3)(A) response
is not the place for argumentative denials). Because of this, it
is struck.

Paragraphs 53, 59, 65, 84, and 92 are deemed admitted and
the additional facts are struck. Donald fails to provide any
record evidence to support these responses.

The other paragraphs listed above are similarly deficient and are also deemed admitted with the additional facts struck. The specific example here is merely illustrative of the deficiencies in the other responses.

### 2. *Donald's Declarations and Other Record Evidence*

Portillo's next argues that the Court should strike portions of Donald's declaration. It contends that these statements lack foundation or are speculative. Portillo's also claims that several portions of two other declarations must be struck because they are based upon hearsay. Finally, Portillo's requests that the Court strike several other exhibits Donald submitted in opposition to Portillo's Motion for Summary Judgment. The Court will address each objection in turn.

#### a. *Donald's Declaration*

Portillo's argues that the Court should strike portions of Donald's declaration because these statements are not based upon Donald's personal knowledge. Rule 56(e) requires that supporting materials be based on "personal knowledge" and set forth facts that would be admissible as evidence. FED. R. CIV. P. 56(e).

In the first paragraph of her declaration, Donald states she was fired on September 24, 2010 because she was "1.5 late to work on a date when I learned myr *[sic]* daughter was sexually assaulted on two prior dates." Donald's Decl. ¶ 1, ECF No. 71-1,

PageID# 1301. Portillo's asserts that this is not based upon Donald's personal knowledge.

The Court disagrees. While it is clear that the parties dispute the circumstances surrounding how Donald's employment with Portillo's ended, it is reasonable to assume that a former employee knows how her employment ended. As such, the Court refuses to strike this portion of the declaration. The Court notes that this decision has no bearing on the underlying issue of whether Donald resigned voluntarily or was terminated. Determinations of this kind are inappropriate at summary judgment. *See*, *Kodish v. Oakbrook Terrace Fire Prot. Dist.,* 604 F.3d 490, 507 (7th Cir. 2010).

Additionally, the Court declines to strike Paragraph 6. Here, Donald claims she was demoted from her position as Banquet Manager. While Portillo's disputes that Donald was ever promoted, this does not mean that Donald's alleged demotion would be outside her personal knowledge.

Paragraph 7 is similar. However, the Court strikes the portion of this paragraph where Donald asserts that Castillo engaged in serious wrongful actions directed against other African American employees. Donald fails to provide any support or otherwise lay a foundation for her assertion that Castillo engaged in wrongful actions toward other African American employees.

Donald's assertion in Paragraph 19 that "Castillo . . . knew that other employee's cars were parked next to my car" is also struck. Donald's Decl. ¶ 19. Donald fails to establish that she had personal knowledge regarding what Castillo knew at the time in question. Similarly, the Court strikes Paragraph 24 in its entirety. Here, Donald claims another employee refused to work Sundays but received more overtime than she did. *Id.* ¶ 24. Donald fails to lay any foundation regarding how she knew another employee's availability and/or the overtime hours.

The Court strikes Paragraph 29 as well. In this paragraph, Donald asserts that Eric Peterson "had specific knowledge of my [Donald's] complaints against him . . . [and] was listening to my [Donald's] conversation with HR . . ." *Id.* ¶ 29. Donald fails to establish how such a statement is within her personal knowledge.

With respect to Paragraph 31, the Court strikes lines 9-14. Here, Donald describes receiving a written "counseling statement" from Portillo's regarding an instance where she was supposed to deliver a cash envelope to an armed guard. In lines 9-14, Donald states that the guard violated "established safety procedures" and that she was given "a pretextual write up by HR." *Id.* ¶ 31. Such statements are not within Donald's personal knowledge and are legal conclusions. *See, Liberles v. Cook County,* 709 F.2d

1122, 1129 (7th Cir. 1983) (affidavit stating legal conclusions not entitled to consideration).

The same holds true for the last line of paragraph 32. Donald claims here that another employee received training she did not. Donald neglects to establish if this employee was even employed at the same time she was and cannot establish that this employee's training was within her personal knowledge.

Paragraph 33 describes another employee's termination. The Court strikes the entirety of this paragraph except for Donald's statement she gave the former employee an egg when the employee visited Portillo's after being terminated and Donald was reprimanded for doing so. Donald's statement regarding the fact that she contacted an ambulance and was taken to the hospital is also permissible. However, all the other statements in Paragraph 33 are without Donald's knowledge and are struck. This includes Donald's claim that being reprimanded caused health complications.

Paragraph 34 is struck in its entirety. Here, Donald claims that the employee referenced in Paragraph 33 was offered her job back "in a clear effort to obtain a false and pretextual basis to terminate or retaliate against [Donald] . . . " *Id.* ¶ 34. This statement is not only a legal conclusion but also not within Donald's personal knowledge.

Paragraph 35 describes an incident where a Portillo's supervisor visited Donald's store and was "so aggressive and hostile" that Donald was forced to go to the manager's office and call "Mike Dillon to complain about Nuno's overly hostile behavior." *Id.* ¶ 35. While Portillo's argues the above language should be struck, the Court disagrees. This is plausibly within Donald's knowledge and therefore can be considered.

The Court strikes the last line of Paragraph 36 where Donald states that one of her managers learned of one of Donald's complaints on January 6, 2010. Donald fails to lay a foundation or otherwise establish personal knowledge. Similarly, the Court strikes the last line in Paragraph 37.

The Court finds the remaining allegations in Donald's declaration plausibly within her personal knowledge and therefore declines to strike such statements for the purposes of summary judgment.

*b. Declarations of Brian Logsdon and Aramando Moreno*

Portillo's also argues that the Court should strike significant portions of two other declarations Donald submits as support – Brian Logsdon ("Logsdon") and Aramando Moreno ("Moreno"). Logsdon and Moreno were both Assistant Managers at the time Donald was employed with Portillo's. Logsdon states that he was instructed by upper management to write Donald up for "anything possible." Logsdon Decl. ¶ 4. Moreno states that

during a business trip, another manager informed him that "he had been specifically instructed by his manager that while assigned to the Skokie location he should do whatever was possible to get LaTonya Donald fired." Moreno Decl. ¶ 5. Portillo's argues these statements should be struck because they are inadmissible hearsay. Donald responds that the declarations are non-hearsay under Rule 801(d)(2)(D) as admissions by a party opponent.

Donald has the better argument. Rule 801(d)(2) defines non-hearsay. In relevant part it states that a statement is not hearsay if "[t]he statement is offered against an opposing party and . . . (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." FED. R. EVID. 801(d)(2)(D). In employment discrimination cases, a statement falls within Rule 801(d)(2)(D) if it is "about a matter within the subject matter of the agency" and "the declarant is involved in the decisionmaking process affecting the employment action involved." *Keri v. Board of Trustees of Purdue Univ.*, 458 F.3d 620, 630 (7th Cir. 2006).

The Court finds Logdson and Moreno's statements fall within this definition. Logdson states that he was the Assistant Manager at Portillo's Skokie location when a member of upper management instructed him to watch Donald very carefully and "write her up for anything possible." Logsdon Decl. ¶ 4. The Court finds this within the scope of Logsdon's employment. The

Court also finds Logsdon had sufficient decision-making authority in that he was permitted to issue write-ups that could lead to termination.

The Court acknowledges that Donald's employment did not end while she was at Portillo's Skokie location. Thus, an argument could be made that Logsdon's statement does not qualify as an admission under Rule 801(d)(2)(D) because he was not involved in the decisionmaking process regarding the end of Donald's employment in 2010. However, the Seventh Circuit has held that a "subordinate's [in this case, Logsdon's] account of an explanation of the supervisor's understanding regarding the criteria utilized by management in making decisions on hiring, firing, compensation and the like is admissible against the employer, regardless of whether the declarant has any involvement in the challenged employment action." *Simple v. Walgreen Co.*, 511 F.3d 668, 672 (7th Cir. 2007). While Logsdon was not necessarily involved in the employment action in 2010, his statements regarding the instructions he received from upper management involved the criteria that were being used to enforce disciplinary actions which eventually could lead to termination.

The same is true of Moreno's declaration. It states that Portillo's hired him in April 2002 and in early 2008 he was sent to California to assist with a restaurant being opened there. He

avers that while he was staying in California, Nate Bowers, the then-Manager of Portillo's Skokie location, informed Moreno that he "had been specifically instructed by his manager that while assigned to the Skokie location he should do whatever was possible to get LaTonya Donald fired." Moreno Decl. ¶ 5. While it seems unlikely Moreno was involved in any decisions regarding Donald's employment, his account of Donald's supervisor's explanation regarding the criteria utilized by management to terminate her employment is admissible against Portillo's, regardless of whether he had any involvement in Donald's employment actions. *Simple*, 511 F.3d at 672.

Based on the above, at this stage in the litigation, the Court finds the declarations admissible under Rule 801(d)(2)(D). *See id.; see also Aliotta, v. National R.R. Passenger Corp.*, 315 F.3d 756, 761-62 (7th Cir. 2003).

### c.  Other Documents/Exhibits

Portillo's also argues that the Court should strike Exhibits D, H, M, P, Y, DD, GG, II, KK, OO, RR, TT, VV, WW, ZZ, BBB, EEE, FFF, NNN and PPP. It claims these Exhibits are not authenticated and therefore fail to comply with Federal Rule of Evidence 901. Donald responds that nine of the said Exhibits were materials produced by Portillo's and thus for the purposes of summary judgment, are deemed admissible. Donald contends that the other documents were authenticated during depositions.

The Court agrees with Donald's assertion regarding the Exhibits Portillo's produced.  The Seventh Circuit has held that "[a] party's "very act of production [i]s implicit authentication." *United States v. Brown*, 688 F.2d 1112, 1116 (7th Cir. 1982).  Because Portillo's has not denied the production of such Exhibits, the Court declines to strike Exhibits D, H, M, K, P, DD, HH, TT, and ZZ.

The remaining exhibits however, are struck.  Exhibits DD, GG, KK, II, RR, VV, WW, BB, EEE, FFF, NNN, PPP are unauthenticated.  While Donald argues that the documents were authenticated through various deposition testimony she fails to provide the relevant excerpts from the depositions.  Because of this, the Court refuses to consider Exhibits DD, GG, KK, II, RR, VV, WW, BB, EEE, FFF, NNN, PPP.  *See, Rosemary B. on Behalf of Michael B. v. Bd. of Educ. of Community High Sch. Dist. No. 155,* 52 F.3d 156, 159 (7th Cir. 1995) (stating unauthenticated documents are inappropriate for the court to consider as evidence at summary judgment); *see also, United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991).

While Donald submitted deposition testimony in an attempt to authenticate Exhibit KK, the submitted testimony does not provide adequate authentication.  Instead, when presented Exhibit KK the deponent stated, "I can't recall because I don't – I am unaware of this document.  I don't know if this is a draft or if this was

presented to anyone."  Maloney Dep. page 92-93, ECF No. 95, PageID # 2388-89.  This testimony clearly does not satisfy the requirements of Rule 901.  Accordingly, the Court denies Portillo's Motion to Strike Exhibits D, H, M, K, P, DD, HH, TT, and ZZ, but grants its Motion to Strike Exhibits DD, GG, KK, II, RR, VV, WW, BB, EEE, FFF, NNN, and PPP.

### d. Donald's Statement of Additional Facts

Finally, Portillo's argues that the Court should strike portions of Donald's Local Rule 56.1(b)(3)(C) Statement of Additional Facts.  Portillo's contends various portions of the statement are unsupported or conclusory.

After reviewing the objected to statements and Donald's claimed support, the Court agrees with Portillo's regarding Paragraphs 1 (lines 5-7), 5 (lines 3-4), 6, 9 (lines 8-10), 10, (lines 15-16), 17, 19, 25, 26 (lines 2-7), 29, 32 (lines 4-6 and lines 8-9), 34 (line 1), 35, 38 (lines 3-7), 41 (lines 1-2, 18), 42, 49, 50 (lines 1-2), 52 (lines 6-8), 57, and 60.  The above portions of Donald's Statement of Additional Facts either lack support or are conclusory.

### B.  Portillo's Motion for Summary Judgment

The Court now turns to Portillo's Motion for Summary Judgment on all five of Donald's Title VII Counts.

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and [it]

is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is material if it could affect the outcome of the case. *Id.* If the moving party satisfies its burden, the non-movant must present facts to show a genuine dispute exists to avoid summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

### *1. Counts I & II - Discrimination under Title VII*

In Counts I and II, Donald alleges that Portillo's discriminated against her on the basis of her race and gender. Portillo's claims summary judgment is warranted because Donald cannot establish a *prima facie* case.

Title VII "prohibits employment discrimination on the basis of race, color, religion, sex, or national origin." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) citing 42 U.S.C. § 2000e-2(a)(1). Discrimination claims based upon race or gender can be established in one of two ways – under a direct or indirect method of proof. *Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007). Under either method, a plaintiff must establish that she suffered an adverse employment action. *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004).

Donald claims she suffered a variety of adverse employment actions. She claims the disciplinary actions taken against her, her alleged demotion, reduction in overtime, alleged forced transfers, and alleged termination all constitute adverse employment actions.

As a preliminary matter, the Court notes that the "[r]eceipt of oral warnings, undesirable work shifts, or failure to assign discretionary overtime work" are not considered adverse employment actions for the purposes of Title VII. *Rainey v. Metro. Water Reclamation Dist. of Greater Chicago*, No.11 C 2594, 2013 WL 2467707 (N.D. Ill. June 7, 2013) citing *Kersting v. Wal—Mart Stores, Inc.,* 250 F.3d 1109, 1118-1119 (7th Cir. 2001). Thus, the Court will not consider such action relevant in determining whether summary judgment is appropriate. Instead, the Court will only consider Donald's alleged demotion and termination for the purposes of her Title VII claims. *See generally, Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744-45 (7th Cir. 2002). While Portillo's argues Donald was never terminated or demoted, it is clear that a disputed issue exists with respect to these issues. As such, for the purposes of this Motion, the Court assumes without deciding that Donald suffered an adverse employment action.

*a. Direct Method*

Donald argues that she can proceed under both the direct and indirect methods of proof. Under the direct method a plaintiff must present "direct or circumstantial evidence that creates a convincing mosaic of discrimination on the basis of race." *Good v. Univ. of Chi. Med. Ctr.,* 673 F.3d 670, 674 (7th Cir. 2012). "[D]irect evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (citations omitted). Circumstantial evidence "allows a jury to infer intentional discrimination by the decisionmaker," however, such evidence "must point directly to a discriminatory reason for the employer's action." *Id.*

Donald contends there is sufficient circumstantial evidence to create a convincing mosaic of discrimination on the basis of her race and gender. Specifically, she points to the actions of first manager, Castillo. She claims Castillo "regularly cursed as *[sic]* her, but not at Hispanic or male employees," and claims that he changed her "work schedule to dates that he knew she was not available to work while not doing same *[sic]* to Hispanic and/or male employees." Pl.'s Resp. to Def.'s Mot. for Summ. J. at 21-22. She also states that because Castillo reduced her overtime and told her that she had "to *[sic]* much power" a

convincing mosaic of discrimination can be established. *Id.* at 22.

Accepting all of Donald's allegations as true, there is nothing in the above evidence that "points directly to a discriminatory reason" for Portillo's alleged adverse employment actions. *Rhodes*, 359 F.3d at 498. The Seventh Circuit has held that for a plaintiff to establish a convincing mosaic there must be specific evidence linking the alleged discrimination to the adverse employment action. *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003). Here, there is simply no evidence that Portillo's demoted or terminated because she was African-American. As such, the Court does not find that Donald can proceed under the direct method for Count I.

The same is true with respect to Count II – Donald's sex discrimination claim. While Donald argues she can proceed under the direct method because of the previously mentioned actions of Castillo and because she reported a different manager approached "her with an erection," such evidence does not point directly to a discriminatory reason for Donald's demotion or termination. Pl.'s Resp. to Def.'s Mot. for Summ. J. at 22.

As further support, none of Donald's complaints concerned supervisors who were responsible for Donald's alleged termination or demotion. *Harris v. Warrick Cnty. Sheriff's Dep't*, 666 F.3d 444, 448 (7th Cir. 2012) (stating that to prove employment

discrimination, a plaintiff evidence that the decisionmaker responsible for the adverse employment action acted for a prohibited reason). Accordingly, the Court finds Donald is unable to proceed under the direct method in Count II.

### b. Indirect Method

Donald also claims she can proceed under the indirect method with respect to Counts I and II. To establish a *prima facie* case under the indirect method, Donald must establish that: "(1) she is a member of a protected class; (2) her job performance met [the employer's] legitimate expectations; (3) she suffered an adverse employment action; and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012).

For the purposes of this Motion, the Court need not address the first three factors of the test because Donald has failed to identify a similarly situated employee. While there is no specific formula, generally courts require a plaintiff alleging that a similarly situated employee was given better treatment to "at least show that the comparators (1) dealt with the same supervisor; (2) were subject to the same standards; and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or

the employer's treatment of them." *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012).

Donald claims three Hispanic employees were given more overtime than her. Despite the fact that the Court has already stated that the distribution of discretionary overtime is not an adverse employment action, Donald fails to present any admissible evidence to support her conclusory statements that these individuals were given more overtime. Most importantly though, Donald does not assert that any of these three employees arrived to work more than one hour late and remained employed, or that any of these employees worked as Crew Chiefs and then Banquet Managers and remained employed in both positions for a longer period than she did. This is what is required to satisfy the fourth element under the indirect method. *See*, *Gates v. Caterpillar*, 513 F.3d 680, 690 (7th Cir. 2008) (explaining that though the plaintiff need not show that the other employees are "explicitly identical," she must show that they engaged in similar conduct."); *see also, Prasad v. Acxiom Corp.*, No. 10-C-5943, 2013 WL 2636050 (N.D. Ill. June 12, 2013).

Accordingly, because the Court finds Donald is unable to establish a *prima facie* case under either method, the Court grants Portillo's summary judgment with respect Counts I and II.

## 2. *Counts IV and V - Title VII Hostile Work Environment*

Counts IV and V assert hostile work environment claims under Title VII.  Count IV relates to the alleged harassment from Castillo.  Count V concerns the alleged harassment from Donald's former manager Patrick Tuszynski.  Portillo's contends Donald cannot establish a *prima facie* case for either claim.  The Court agrees.

To survive summary judgment on a hostile work environment claim under Title VII, Donald must establish that (1) she was subjected to unwelcome harassment that was both subjectively and objectively offensive; (2) the harassment was based on her race or gender; (3) the harassment was severe and pervasive enough to alter the conditions of her environment; and (4) there is a basis for employer liability.  *Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006).  An employer is liable if the plaintiff's supervisor created the hostile work environment.  *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

### a. *Count IV*

Donald asserts that Castillo treated her differently due to her sex and race.  She claims that he subjected to her a hostile work environment because he "regularly cursed as *[sic]* her, but not Hispanic or male employees . . . [and] repeatedly modified

- 27 -

Donald's work schedule to dates that he knew she was not available to work while not doing same *[sic]* to Hispanic and/or male employees." Pl.'s Resp. at 21-22. She adds that Castillo excluded her from large amounts of overtime and forced her to work long hours without breaks. *Id.*

Even if the Court accepts all these allegations as true, this evidence does not rise to the level of hostility required to assert a hostile work environment claims under Title VII. As the Seventh Circuit has noted,

> Not every unpleasant workplace is a hostile environment. The occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers would be neither pervasive nor offensive enough to be actionable. The workplace that is actionable is the one that is hellish.

*Rogers v. City of Chicago,* 320 F.3d 748, 752 (7th Cir. 2003).

Here, Donald's complaints of profanity, decreased overtime, and modified work schedules are insufficient to rise to the level of an objectively hostile work environment. *See Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2012) (profanity insufficient to rise to the level of hostile work environment). A hostile work environment does not exist when a plaintiff's allegations are for "mere offensive conduct that is isolated, does not interfere with the plaintiff's work performance, and is not physically threatening or humiliating." *Yancick v. Hanna Steel Corp.,* 653 F.3d 532, 544 (7th Cir. 2011). While Castillo's

actions were certainly not professional, the Court does not find such actions rose to an objectively hostile level under Title VII.

Count IV also fails because Donald fails to present admissible evidence that Castillo's inappropriate conduct was motivated by Donald's race or gender. While in a hostile work environment claim, Donald does not need to identify "an explicitly racial dimension of the challenged conduct to sustain a Title VII claim, she must be able to attribute a racial character or purpose to it." *Vance v. Ball State Univ.*, 646 F.3d 461, 470 (7th Cir. 2011). The only admissible evidence of this kind that Donald presents is her own declaration. Without more, this is insufficient to defeat summary judgment. *See, Piscione v. Ernst & Young, L.L.P.,* 171 F.3d 527, 532–533 (7th Cir. 1999). As such, Donald cannot establish a *prima facie* case for Count IV.

### b. Count V

Count V also asserts a hostile work environment claim and alleges that Donald's former manager, Patrick Tuszynski, subjected Donald to severe and pervasive harassment that altered the terms of her employment. Count V fails for similar reasons as Count IV.

While Donald claims that Tuszynski harassed her by "approach[ing] her with an erection . . . and [created] scheduling difficulties" these instances do not rise to the level

of pervasive and severe harassment. Pl.'s Resp. at 22; *see also Mannie*, 394 F.3d at 983. As such, the Court Donald cannot demonstrate that she was subjected to an objectively hostile work environment as a result of harassment from Tuszynski. Therefore, the Court grants Portillo's summary judgment with respect to Count V.

### 3. Retaliation - Count III

Count III alleges that Portillo's is liable under Title VII for retaliation. Similar to discrimination claims under Title VII, a plaintiff suing for retaliation can proceed using either the direct or indirect method of proof. *See Hobgood v. Illinois Gaming Bd.*, --- F.3d ---, No. 11-1926, 2013 WL 3599498 at *5 (7th Cir. July 16, 2013). Donald claims she can proceed under either method.

Under the direct method a plaintiff must offer evidence that (1) she engaged in a protected activity; (2) she was subject to an adverse employment action; and (3) there was a causal link between the protected activity and the employment action. *See Brown v. Advocate South Suburban Hosp.,* 700 F.3d 1101, 1106 (7th Cir. 2012).

Portillo's does not dispute that Donald's four discrimination charges with the IDHR and the EEOC constitute protected activities under Title VII. While it contests Donald's

claims that she was terminated, since all reasonable inferences all drawn in favor of the non-moving party at summary judgment, the Court finds Donald has presented sufficient evidence to at least create a question of fact with respect to how her employment ended. *See Hobgood*, 2013 WL 3599498 at *8. Thus, for the purposes of this Motion, the Court finds Donald has presented sufficient evidence to satisfy the second element of her retaliation claim – that she was terminated. *See Tomanovich v. City of Indianapolis,* 457 F.3d 656, 664 (7th Cir. 2006). The Court points out that Donald's alleged demotion cannot serve as an adverse action for the purposes of her retaliation claim because this action occurred prior to Donald's first charge of discrimination. *See id. at* 664.

That said, the Court proceeds to the inquiry of whether a causal connection exists between Donald's alleged termination and her protected activity. To survive summary judgment, Donald must present evidence from which a reasonable jury could find that Portillo's decided to terminate her because of her various complaints and charges of discrimination. *See University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517, (June 24, 2013) (Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action). Direct evidence of causation requires something akin to an admission from Portillo's that it terminated

Donald because of her protected activity. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). While it is clear that Donald does not have such evidence, (especially given Portillo's assertions that it did not terminate Donald), there is another evidentiary route Donald can use to satisfy the causation element – the "convincing mosaic of circumstantial evidence." *Hobgood*, 2013 WL 3599498 at *7. Using this method, Donald must present admissible evidence that, when taken as a whole and viewed in a light favorable to Donald's case, could convince a reasonable jury that she was the victim of unlawful retaliation.

In reaching the conclusion that Donald has set forth sufficient evidence to establish a convincing mosaic of intentional retaliation the Court finds the affidavits of Brian Logsdon and Armando Moreno persuasive. Logsdon, Donald's assistant manager in August 2007, has sworn that when upper management called "an informal meeting" in August 2007, he "was instructed to watch LaTonya Donald very carefully" and "write her up for anything possible." Logsdon Decl. ¶ 4. It is undisputed that Donald filed her initial charge of discrimination in 2006. Thus, it is plausible that these instructions were given in retaliation for the initial charge. Moreno's affidavit provides further support. Moreno stated that Donald's then-Manager, Nate Bowers, informed Moreno that he was instructed to "do whatever was possible to get LaTonya Donald fired." Moreno Decl. ¶ 5,

ECF No. 71-9, Page ID # 1802.  While it is true that neither Logsdon nor Moreno was Donald's supervisor at the time of her alleged termination, it is plausible that these instructions caused the 2010 incident to be Donald's final warning.  Combining this evidence with Donald's personal declarations and documented disciplinary warnings causes the Court to find Donald has presented a "pattern of criticism" by her various supervisors following her protected activities.  *See Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chi.,* 104 F.3d 1004, 1014-15 (7th Cir. 1997).

Thus, Donald has established that a genuine fact dispute about retaliation exists.  Accordingly, the Court concludes Donald has set forth a *prima facie* case of retaliation under the direct method.  Because of this, the Court declines to analyze whether Donald could also proceed under the indirect method and denies Portillo's summary judgment with respect to Count III.

In sum, Defendant's Motion for Summary Judgment is granted with respect to Counts I, II, IV, and V.  However, the Motion is denied with to Count III.

## IV.  **CONCLUSION**

For the reasons stated herein, the Court rules as follows:

1.  Plaintiff's Motion for Leave to File an Extended brief and extra Statements of Additional Fact [ECF No. 67] is granted;

2.    Defendant's Motion to Strike [ECF No. 84] Exhibits DD, GG, II, KK, RR, VV, WW, BB, EEE, FFF, NNN and PPP is granted;

3.    Defendant's Motion to Strike [ECF No. 84] Exhibits D, H, K, M, P, DD, HH, TT and ZZ is denied;

4.    Defendant's Motion for Summary Judgment [ECF No. 58] is granted with respect to Counts I, II, IV and V; and

5.    Defendant's Motion for Summary Judgment [ECF No. 58] is denied with respect to Count III.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: July 24, 2013